Filed 4/20/21

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073204 |
| v. | (Super.Ct.No. FVI18001116) |
| CORY JUAN BRADEN, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. John M. Tomberlin, Judge. Affirmed.

Cindy G. Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

After a jury convicted him on a charge of resisting an executive officer with force or violence, a defendant requested mental health diversion pursuant to Penal Code section

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B through II.D.

1

1001.36. In the published portion of this opinion, we hold that he was ineligible for that section's "pretrial diversion" because he did not request diversion before trial began. We disagree with *People v. Curry* (2021) 62 Cal.App.5th 314, which held that such a request can be made until entry of judgment. We therefore conclude that the trial court properly denied his request to be considered for diversion, and we affirm.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

One morning in Victorville in 2018, defendant and appellant Cory Juan Braden Jr.'s sister called 911 after a confrontation with Braden. According to Braden's mother, his sister was "messing with [Braden] so bad that he got up to beat her behind." At one point, Braden's sister went to her room, Braden tried to follow her, but Braden's mother stood in his way, causing Braden to kick his mother in the groin and choke her.

Deputy Alexander Harvey responded to the domestic disturbance call. He had learned from a dispatcher that Braden was schizophrenic with a history of violence. Braden's sister flagged down Harvey outside of the home. Harvey approached Braden outside the front door and announced himself as a San Bernardino County Sheriff's Deputy. Braden's sister and mother were present. Braden requested to call 911 and contact a supervisor. Harvey replied that Braden could contact a supervisor, but Harvey first needed to ensure the scene was safe and conduct a cursory pat down on Braden.

---

[1] All undesignated statutory references are to the Penal Code. In the unpublished portion of this opinion, we reject Braden's contentions other than his request for diversion.

Harvey viewed Braden as "passively resistant" and "more focused on calling 911 than putting [his] phone down and listening to [Harvey's] commands."

Harvey took hold of Braden's left wrist. Braden then placed a phone in his right hand on the hood of a nearby vehicle. Braden held his hands up, and Harvey told him to put them behind his back instead. Braden then turned around and punched Harvey in the face. Harvey backed up, and when Braden approached Harvey with his hands gripped as fists, Harvey threw two ineffective punches toward Braden. Braden threw about three more punches at Harvey. Harvey then tackled Braden, got on his back, and punched him twice on his left side. Harvey ordered Braden to put his hands behind his back, but Braden did not comply. Two additional deputies arrived on the scene, and the trio was able to physically restrain Braden. Braden's mother later stated that Braden had "charged" Harvey.

Braden represented himself during his jury trial. The jury viewed much of the encounter between Braden and Harvey, as Braden's sister captured it on video with her phone. She captured the moments leading up to the fight, but she pointed the camera away from Braden and Harvey during most of the fight, and she apparently stopped recording before the other deputies arrived.

The jury convicted Braden on one felony count of resisting a police officer pursuant to section 69 and found true two strike priors under the Three Strikes Law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

After his conviction but before his sentencing, Braden requested and was given appointed counsel. Counsel requested that Braden be considered for mental health diversion pursuant to section 1001.36. The trial court ruled that Braden was "ineligible for relief under [section 1001.36]. I'm ruling that it's untimely. I'm ruling that it's moot. And if it weren't, I would deny it in any event because it would still be discretionary." The court then sentenced Braden to four years in prison, which consisted of the midterm of two years, doubled under the Three Strikes Law.

## II. DISCUSSION

### A. *Mental Health Diversion*

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders." (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).) Braden contends that he should have been considered for pretrial mental health diversion pursuant to section 1001.36. He sought diversion, however, only after he was convicted at his jury trial. For three reasons, we conclude that a defendant is ineligible for diversion under section 1001.36 after his trial begins, so the trial court properly denied his request.

The first reason why we so conclude is that the Legislature five times in the text of section 1001.36 referred to the mental health diversion program as "pretrial" diversion. (§ 1001.36, subds. (a), (b)(1), (c), (d)(1), (d)(2).) Regardless of the precise moment that defines the beginning of trial, a case is no longer "pretrial" once a trial has started. A case certainly is not pretrial where, as here, a jury has convicted the defendant.

4

Second, even apart from the Legislature's use of the adjective "pretrial" in describing section 1001.36's diversion program, our Supreme Court's precedent would require us to construe the section as authorizing only pretrial diversion.

*Morse v. Municipal Court for the San Jose-Milpitas Judicial Dist.* (1974) 13 Cal.3d 149 (*Morse*) held that when a statute makes diversion contingent upon a speedy trial waiver, it requires a pretrial request. *Morse* addressed California's first statutorily mandated diversion program, enacted by a 1972 statute intended to benefit first time drug offenders. (*Id.* at p. 153.) *Morse* concerned a petitioner who litigated a pretrial motion to suppress evidence, lost, and only then sought diversion. (*Id.* at p. 154.) The trial court denied diversion on the view that the petitioner "had elected to be prosecuted in the criminal courts" when he filed his suppression motion. (*Ibid.*)

Our Supreme Court instead held that the request was timely because it was made pretrial, reasoning that law's speedy trial waiver requirement demonstrated that the request must be made before trial:

"[The diversion law] expressly states that '[if] the defendant *consents and waives his right to a speedy trial* the district attorney shall refer the case to the probation department' (italics added). These words unequivocally make a defendant's consent to consideration for diversion contingent upon a simultaneous waiver of speedy trial rights. In using such language the Legislature was surely aware of precedent decisions [citations] which recognize that the right to speedy trial is one which must be asserted prior to the actual commencement of trial, usually by means of a motion to dismiss made

5

at the time the trial date is set or at the time the case is called for trial. Accordingly, the plain meaning of the waiver of speedy trial language of [the diversion law] is that the defendant's consent to referral of his case to the probation department should be tendered to the district attorney prior to the commencement of trial." (*Morse*, *supra*, 13 Cal.3d at p. 156.) Thus, the Court stated, "the clear wording of the diversion provisions . . . precludes a defendant from initiating diversion proceedings by tendering a consent after commencement of trial." (*Id.* at p. 157; see also *People v. Wilson* (1963) 60 Cal.3d 139, 146 ["The right to a speedy trial must . . . be asserted, if at all, in the court where the prosecution is pending, and prior to the commencement of trial."]; *People v. Weaver* (2019) 36 Cal.App.5th 1103, 1120.)

As in *Morse*, eligibility for mental health diversion under section 1001.36 "unequivocally make[s] a defendant's consent to consideration for diversion contingent upon a simultaneous waiver of speedy trial rights." (*Morse*, *supra*, 13 Cal.3d at p. 156.) Among the "threshold eligibility requirements" in section 1001.36 is that, unless the defendant has been found to be mentally incompetent, he or she must consent to diversion and waive his or her right to a speedy trial. (*Frahs*, *supra*, 9 Cal.5th at p. 627; § 1001.36, subd. (b)(1)(D).)

As *Morse* observed, for a defendant to waive his or her speedy trial right, the defendant must not yet have proceeded to trial. *Morse*'s reasoning applies here, requiring

6

us to construe section 1001.36 as precluding requests for mental health diversion after trial begins.[2]

Third, construing section 1001.36 as requiring that a diversion request be made before trial is consistent with the nature of California diversion programs, which long have had a purpose of reducing the systemic burdens of criminal trials. Our Supreme Court described California's first diversion program has having two purposes, one of which was to rehabilitate a defendant without the stigma of a conviction, and the other of which was to create a "quick and inexpensive method of disposition" that enabled courts "to devote their limited time and resources to cases requiring full criminal processing." (*People v. Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 61-62 (*On Tai Ho*).)

Since that time, the Legislature has developed an array of diversion programs, now found in sections 1000 through 1001.97. Some are structured as pretrial diversion, where a defendant is diverted before trial or guilty plea, and some are structured as "deferred entry of judgment," where a defendant must plead guilty before entering the program. (See, e.g., § 1000.1, subd. (b) [pretrial diversion in drug cases upon a speedy trial waiver]; § 1000.9, subd. (a)(3) [deferred entry of judgment in drug cases upon a plea of

---

[2] We note, further, that in addition to the speedy trial waiver, there is another section of the statute that is in tension with a view that diversion may occur after conviction. Section 1001.36, subdivision (e) states that at the end of successful diversion, the charges will be dismissed, and the defendant's arrest shall be deemed never to have occurred. The statute contains no provision for setting aside a conviction, which would be expected if the Legislature contemplated postconviction motions. (See *People v. Craine* (2019) 35 Cal.App.5th 744, 757 (*Craine*), disapproved on another ground in *Frahs*, *supra*, 9 Cal.5th at p. 641.)

guilty].) We are not aware of any cases indicating that, in the normal course, a defendant can be (or has been) admitted to any such programs after conviction at trial. Rather, the purpose of diversion and deferred entry of judgment programs "is precisely to *avoid* the necessity of a trial." (*Gresher v. Anderson* (2005) 127 Cal.App.4th 88, 111; see *People v. Hudson* (1983) 149 Cal.App.3d 661, 664 ["diversion is a *pretrial* alternative to further prosecution"]; *People v. Alonzo* (1989) 210 Cal.App.3d 466, 468, 470 (trial court acted in excess of its jurisdiction by granting diversion after trial); 12 Witkin, Cal. Criminal Law Pretrial § 391 ["No Diversion After Trial"].) Our view of section 1001.36 fits it comfortably into the norm for our Legislature's diversion programs.[3]

Given that section 1001.36 enacts "pretrial" diversion; that *Morse* held that a speedy trial waiver requirement mandates pretrial diversion; and that diversion historically has not been available for those who proceed to trial, what is the potential complication here?

It is this. Braden's claim that a section 1001.36 request can be made after trial largely arises from the statute's definition of "pretrial diversion": "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." (§ 1001.36, subd. (c).)

---

[3] A diversion statute newly effective this year provides trial judges discretion to grant diversion in misdemeanor cases (see § 1001.95, subd. (a)) and does not use the adjective "pretrial" to modify "diversion" or require a speedy trial waiver. We do not interpret this section, but we note the contrast with the statute before us.

Uprooted from its context, the phrase "until adjudication" could refer to a point later than the start of trial:  (1) until the jury verdict or (2) until the sentence is pronounced and the final judgment is issued.  (The first of these would not help Braden, and he argues that the term means the latter.)  In *Frahs*, our Supreme Court did not address this issue, stating that it had "no occasion" to "precisely define 'until adjudication,' as used in section 1001.36, subdivision (c)."  (*Frahs*, *supra*, 9 Cal.5th at p. 633, fn. 3.)

We conclude that in context of section 1001.36, "adjudication" does not refer to a point after the trial begins.  We believe, rather, that "adjudication" refers to the *process* of adjudicating an issue, such as a court's adjudication of guilt or innocence through a trial. This use of "adjudication" to identify a process is common and uncontroversial.  For instance, our Supreme Court referred to adjudication as a process in a case involving the same diversion law considered in *Morse*; there, it was referring to the process of determining whether a defendant is well suited for diversion.  (See *On Tai Ho*, *supra*, 11 Cal.3d 59, 62 ["If it appears the defendant may be eligible [for first-time drug offender diversion], the process of adjudication begins."]; see also, e.g., *People v. Wright* (2002) 99 Cal.App.4th 201, 207 [referring to "pretrial or preadjudication diversion" synonymously with diversion "*before* a determination of guilt by trial or plea"].)  Other sources use "adjudication" as referring to a process as well, such as dictionaries and federal statutes.  (See, e.g., Merriam-Webster Dict. Online, <https://www.merriam-webster.com/dictionary/adjudication> [first definition of "adjudication" is "the act or

9

process of adjudicating a dispute"] [as of April 7, 2021]; 5 U.S.C. § 551(7) [under federal Administrative Procedures Act, "'adjudication' means agency process for the formulation of an order"].) While "adjudication" could in some contexts mean "judgment" or "sentencing," in this context it refers to the whole "trial." Our colleagues in *People v. Torres* (2019) 39 Cal.App.5th 849, 855 construed the term in section 1001.36 in this manner: "'Until adjudication' means before the jury is empaneled and sworn."

There is a simple reason why "adjudication" here refers to the process of trial or plea. The Legislature used the term as part of a definition of "pretrial" diversion. "In settling on a fair reading of a statute, it is not unusual to consider the ordinary meaning of a defined term, particularly when there is dissonance between that ordinary meaning and the reach of the definition." (*Bond v. United States* (2014) 572 U.S. 844, 861.) If, as Braden would like, "until adjudication" refers to a posttrial moment such as the time of sentencing, the definition of "pretrial diversion" would be at odds with the ordinary meaning of the word pretrial. That is, the very term being defined would be read out of the statute. That is not a tenable way to read a statute. Further, it is understandable why the Legislature used the term "until adjudication" rather than a phrase such as "until trial." Most adjudications occur by guilty plea, rather than through trial, so defining "pretrial" using the term "until adjudication" encompasses both a plea hearing and an adjudication by trial.

It is important to recognize that the definition of "pretrial diversion" that the Legislature used in section 1001.36 is not one newly created for that statute. Rather, it is

10

one that the Legislature has been using for over forty years. The Legislature appears to have first used the phrase "until adjudication" to define "pretrial diversion" in enacting former section 1001.1, a 1977 law allowing local jurisdictions to create their own diversion programs.[4] Nothing in former section 1001.1, the broader diversion law it was a part of, or that law's legislative history suggests that the Legislature meant to deviate from *Morse*, which had held just three years earlier that diversion motions were to be made before trial. (Stats. 1977, ch. 574, § 2, p. 1819 [enacting former § 1001.1]; cf. *Davis v. Municipal Court*, *supra*, 46 Cal.3d at pp. 73-75 [describing history of diversion law containing former § 1001.1].)

The 1977 law provided that certain procedural requirements and protections had to be in place if a locality created a diversion program. (See former §§ 1001.3-1001.9.) In doing so, the statute in almost every case stated what the trial court "shall" do, and in the one instance it did not, the statute nevertheless made clear what a diversion program must provide. (See former § 1001.4 ["A divertee is entitled to a hearing, as set forth by law, before his or her pretrial diversion can be terminated for cause."].) But former section 1001.1 did not state that the trial court "shall" allow diversion requests through a certain time or that a divertee "is entitled to" make a motion at such a time. Rather, former section 1001.1 simply stated that pretrial diversion "refers to the procedure of postponing

---

[4] The 1977 law allowing for local jurisdiction diversion programs followed California's 1972 pretrial diversion law, which engendered confusion over whether it preempted local diversion programs. (See *Davis v. Municipal Court* (1988) 46 Cal.3d 64, 73-74.)

prosecution . . . at any point in the judicial process from the point at which the accused is charged until adjudication."

This lack of an imperative or command by the Legislature is telling, in historical context. *Morse* had at that time recently held that diversion must be requested before trial, though at any time before trial. As the Legislature imposed specific procedural requirements elsewhere in the 1977 law, we would expect precatory language if the Legislature had intended that "until adjudication" impose a timing requirement differing from *Morse*. That is, if "pretrial" had meant something different than "before trial" in former section 1001.1, we would have expected the Legislature to have clearly stated as much. It did not. To the contrary, as *Morse* had recently been decided, it is plausible that the phrase "at any point in the judicial process until adjudication" in former section 1001.1 was intended to codify *Morse*'s holding that pretrial diversion requests can be made *at any time* before trial, that is, that they can be made even if a pretrial motion has been filed.

Nothing in section 1001.36, which uses virtually the same language as former section 1001.1, or its legislative history shows that the Legislature sought to apply the phrase "until adjudication" in a manner different from its use in former section 1001.1.[5] Similarly, the Legislature has defined pretrial diversion using the term "until

---

[5] Section 1001.36, subdivision (c) states that "'pretrial diversion' means the postponement of prosecution," whereas former section 1001.1 stated that "pretrial diversion *refers to* the procedure of postponing prosecution" (italics added). We see no meaningful difference between the two. Here, "means" is simply a synonym of "refers to."

adjudication" in three other pretrial diversion statutes currently in force, as well as in section 1001.36 and in the current version of section 1001.1. (See §§ 1001.50, subd. (c) [model misdemeanor diversion statute]; 1001.70, subd. (b) [parental diversion]; 1001.80, subd. (k)(1) [military diversion].) We can find no indication that the Legislature intended—nor even that there has been a litigated claim that the Legislature intended—that pretrial diversion could be requested after trial in any of those diversion programs. (Cf. *People v. Anderson* (2010) 192 Cal.App.4th.Supp. 8, 12 [upholding superior court policy of denying day-of-trial misdemeanor diversion requests where pretrial diversion statute used "until adjudication" definition].) It seems to us that, if one were to conclude that the "until adjudication" language evinces an intent that a section 1001.36 diversion motion may be filed after trial begins, one would have to conclude that it means the same for the various other diversion statutes. This has not been suggested through many years of their existence.

In contending that mental health diversion is available at any point prior to sentencing, Braden also relies on subdivisions (b)(3) and (c)(4) of section 1001.36. Section 1001.36, subdivision (b)(3) states that "[a]t any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion." Braden focuses on the first phrase of this provision, contending that the phrase "[a]t any stage of the proceedings" shows that the Legislature contemplated mental health diversion to be available at any point prior to sentencing.

Once again, on its face and apart from the context, the phrase "[a]t any stage of the proceedings" does leave open the possibility that diversion can be sought after conviction and before sentencing. But so might the phrase "until adjudication," and for the reasons provided in our discussion of that phrase and of *Morse*, we believe that the better reading of the whole statute remains defining "pretrial" as meaning before trial.

Section 1001.36, subdivision (c)(4) does not help Braden, either. That provision states in part that "[u]pon request, the court shall conduct a hearing to determine whether restitution, as defined in subdivision (f) of Section 1202.4, is owed to any victim as a result of the diverted offense and, if owed, order its payment during the period of diversion." Braden contends that, because a restitution order is prepared by "the sentencing court" (§ 1202.4, subd. (f)(3)), and because the requirement for restitution under section 1202.4 is triggered by a conviction (§ 1202.4, subd. (a)), section 1001.36 contemplates posttrial mental health diversion.

Braden's argument proves too much. His essential claim is that only a "sentencing court" may impose restitution, so the restitution contemplated by section 1001.36 must occur at a postconviction sentencing. The import of this argument, however, is not merely that section 1001.36 *contemplates* posttrial mental health diversion, but that the statute *requires* it. That is the only way for there to be a "sentencing court" that orders restitution. The Legislature certainly did not wish to define "pretrial diversion" to mean diversion that occurs *only* after trial, and we decline to interpret section 1001.36 in such a way here. Rather, section 1001.36, subdivision (c)(4) simply allows the trial court to

14

order a defendant to pay the restitution that would *normally* be ordered at sentencing to instead be paid during diversion.

Braden also contends that the purpose of mental health diversion is to divert individuals with mental disorders away from the criminal justice system and into treatment, and that it therefore "makes sense to leave the option of diversion open until sentencing." (See § 1001.35, subd. (a) [one purpose of mental health diversion is to promote "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety"].) The general purpose of the statute cannot, however, override the very significant eligibility limitations the Legislature provided in the program. These included excluding defendants with one of three specific mental disorders (§ 1001.36, subd. (b)(1)(A), excluding defendants whose mental disorders were not significant factors in their offense (§ 1001.36, subd. (b)(1)(B)), and excluding defendants who committed eight types of crimes (§ 1001.36, subd. (b)(2)). Whether these exclusions "make sense" was determined by the Legislature. Excluding defendants who request diversion only after proceeding to trial is simply another exclusion, and if that exclusion is clear enough, which we think it is, the general purpose of the statute is inapposite.

Braden relies on a Court of Appeal case for the proposition that "[a]t most, 'adjudication' [in section 1001.36] could be synonymous with the rendition or pronouncement of judgment, which occurs at the time of sentencing." (*Craine*, *supra*, 35 Cal.App.5th at p. 755.) But *Craine* was actually deciding whether section 1001.36

15

applied retroactively to defendants convicted before it was enacted but whose cases were not yet final, the question our Supreme Court later addressed in *Frahs*. It did not decide that "until adjudication" means "until sentencing"; it merely noted, as we have, that the term "adjudication" *can* mean that. *Craine* provides no additional support for the conclusion Braden seeks.

Our colleagues in the Third District reached a contrary conclusion to ours in *People v. Curry*, *supra*, 62 Cal.App.5th 314 (*Curry*). *Curry* held that "a defendant may ask the trial court for mental health diversion until sentencing and entry of judgment." (*Id.* at p.325.) It based its holding on an interpretation of the meaning of "until adjudication" in section 1001.36, informed primarily by our Supreme Court's dicta in *Frahs*, a legislative intent for section 1001.36 to apply as broadly as possible, and *Curry*'s view that allowing diversion anytime before sentencing effectuates section 1001.36, which the court viewed as "empower[ing] the trial court[] with broad discretion." (*Id.* at pp. 322-325.)

We respectfully disagree with *Curry*. For one thing, *Curry* did not discuss or cite our Supreme Court's opinion in *Morse*, which some of our analysis above focuses on. Our Legislature enacted section 1001.36 against *Morse*'s backdrop establishing that a diversion statute requiring a speedy trial waiver is intended to apply before trial. To reach *Curry*'s conclusion, a court must explain why it distinguishes that case. For another thing, *Curry* does not appear to acknowledge that the conclusion it reaches—allowing diversion motions after trial—is at odds with the ordinary meaning of the

16

adjective "pretrial" in statutory term "pretrial diversion." As well, Curry analyzes the phrase "until adjudication" without recognizing that it has been used in California diversion statutes for over four decades, occurs in several other pretrial diversion statutes, and appears never before to have been interpreted to allow posttrial motions.

Additionally, as we have noted, *Frahs* expressly reserved the issue before us, and we think dicta in that case does not weigh on either side of the matter. At one point, indeed, *Frahs* essentially states our conclusion: "In the normal course of operations, a trial court would determine before trial whether a defendant is eligible for pretrial diversion." (*Frahs*, *supra*, 9 Cal.5th at p. 633.) At another place, *Frahs*'s dicta is more in line with *Curry*: "The Legislature could well have intended to allow judges to decide under the statute whether a defendant's mental disorder was a 'significant factor in the commission of the charged offense' [citation] even after a verdict in which a mental health defense had been presented but rejected by the trier of fact." (*Id*. at p. 636.) We conclude that we should take seriously our Supreme Court's statement that it was not reaching our issue; in this instance, drawing conclusions from its dicta would be tasseography. (*Id*. at p. 633 fn. 3.)

To its credit, *Curry* acknowledges that its ruling might encourage "gamesmanship" by defendants, which presumably means purposely reserving a diversion motion to take a chance at acquittal at trial. (*Curry*, *supra*, 62 Cal.App.5th at p. 325, fn. 4.) *Curry* hopes that trial courts will use their discretion to "deter such questionable defense tactics." (*Ibid*.) The problem we see with this perspective is that, if

17

it is in fact clear that the Legislature allows diversion motions after trial, it is not "gamesmanship" to save them until that time. If the statute in fact allows postconviction motions, it also contains no "good cause" requirement for allowing them after trial. If not required to request diversion before trial, many defendants would lack the incentive to "agree[] to comply with treatment as a condition of diversion" (§ 1001.36, subd. (b)(1)(E)) until after conviction. With *Curry*'s reading of section 1001.36, a jury trial is like the suppression motion litigated a generation ago in *Morse*: a defendant can take his chances at litigating it, and, if that does not work, seek diversion. The Legislature could allow this. But *Curry*'s concern about gamesmanship is in fact identifying a policy reason why the Legislature might not have wished to. Requiring diversion requests before trial encourages defendants to make their request to be exempted from the criminal process before they invoke the most burdensome aspect of it.

Accordingly, because Braden did not request mental health diversion before his trial commenced, he was ineligible.

## B. *Section 17(b) Discretion*

Braden's counsel unsuccessfully moved to have the felony conviction reduced to a misdemeanor pursuant to section 17, subdivision (b). Braden contends that the trial court abused its discretion in denying that motion. We find no abuse of discretion.

Certain crimes, commonly referred to as "wobbler[s]," are punishable in the court's discretion as either a felony or a misdemeanor. (*People v. Park* (2013) 56 Cal.4th 782, 789; § 17(b).) Resisting a police officer pursuant to section 69 is such a wobbler

18

offense.  (See *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1510.)  When a jury finds a defendant guilty of "a wobbler that was not charged as a misdemeanor," as was the case here, "the procedures set forth in section 17, subdivision (b) . . . govern the court's exercise of discretion to classify the crime as a misdemeanor."  (*People v. Park*, *supra*, at p. 790.)

Section 17, subdivision (b) (section 17(b)) "does not specify the criteria a court should consider, but California appellate decisions have indicated the pertinent factors may include those relevant to sentencing decisions, such as the circumstances of the offense, the defendant's appreciation of and attitude toward the offense, and the defendant's character as evidenced by the defendant's behavior and demeanor at the trial."  (*People v. Mullins* (2018) 19 Cal.App.5th 594, 611.)  "In reviewing a trial court's order for an abuse of discretion, we presume the order is correct, indulge all intendments and presumptions to support it on matters as to which the record is silent, and the appellant bears the burden to affirmatively show error."  (*People v. Allen* (2019) 41 Cal.App.5th 312, 330.)  "We . . . give deference to the trial court's weighing of the relevant factors," and "[t]he appellant has the burden of showing that the denial of the motion was clearly irrational or arbitrary."  (*People v. Mullins*, *supra*, at p. 611.)

Braden contends that the trial court did not consider his specific circumstances. The record, however, reflects otherwise.  During sentencing, the trial court expressly discussed both the current offense ("I do agree that it's not the most egregious of PC 69s that I've heard over the years.") and Braden's previous criminal history.  Braden's

criminal history included two strike priors (assault with a firearm and discharge of a firearm in a grossly negligent manner), for which he served a six year prison sentence, as well as four misdemeanors, including an arrest for driving under the influence.

It is apparent that the court considered Braden's criminal record, weighed that record against its view of the severity of Braden's crime here, and concluded that felony sentencing was appropriate. We find nothing unreasonable in this conclusion. Braden has not demonstrated any abuse of discretion.

## C. Romero *Motion*

Braden's counsel unsuccessfully moved to dismiss his strike priors pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. Braden contends that the trial court abused its discretion by denying that motion. Again, we find no abuse of discretion.

A trial court may dismiss a prior strike conviction under section 1385 "in furtherance of justice." (§ 1385, subd. (a); *Romero, supra*, 13 Cal.4th at pp. 529-530.) In considering whether to do so, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) There is a "'strong presumption that any sentence that conforms to [the sentencing norms

20

established by the Three Strikes Law] is both rational and proper.'" (*In re Large* (2007) 41 Cal.4th 538, 550.)

We review the denial of a *Romero* motion for abuse of discretion. (*Williams*, *supra*, 17 Cal.4th at p. 162.) "'Under that standard an appellant who seeks reversal must demonstrate that the trial court's decision was irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of [the] prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*People v Romero* (2002) 99 Cal.App.4th 1418, 1434.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

No such extraordinary circumstances exist here, and the record demonstrates that the trial court properly exercised its discretion. As noted in the discussion on his section 17(b) motion, Braden's strikes included assault with a firearm and discharge of a firearm in a grossly negligent manner, and the conduct underlying the felony here involved striking an officer. Although Braden's assault on the officer did not involve a weapon,

21

and did not result in serious injury, it nevertheless was an act of violence. Harvey, a deputy who was attempting to pat Braden down to ensure the scene was safe, was abruptly punched in the face by Braden. Braden's record showed a repeated history of other violent acts.

Braden's "background, character, and prospects" (*Williams*, *supra*, 17 Cal.4th at p. 161) also do not suggest that the trial court abused its discretion. For example, Harvey was called to Braden's house in response to a domestic disturbance between Braden and his sister, and during that disturbance, Braden at one point kicked and choked his mother. Moreover, at one point during the trial, Braden's mother stated that both Braden and his sister have "anger management" issues, to which Braden responded, "I would like the record to reflect my mother has developmental issues."[6] And finally, we see no indication from the record that Braden ever accepted responsibility or demonstrated remorse for his actions.

Accordingly, even if the record could have supported a different conclusion, the trial court's decision to deny Braden's *Romero* motion was neither irrational or arbitrary, and therefore was not an abuse of discretion.

D. *Lesser Included Offense*

Finally, Braden contends that the trial court prejudicially erred by not instructing the jury on assault, battery, and resisting a peace officer under section 148, subdivision

---

[6] The trial court declined, stating that "[t]here's no testimony" about any purported developmental issues.

(a)(1) (section 148(a)(1)) as lesser included offenses of his charged crime.  As we explain, assault and resisting a peace officer under section 148(a)(1) are lesser included offenses of resisting an executive officer under section 69, but the trial court had no duty to instruct on those crimes here because there is no substantial evidence Braden committed only the lesser crimes.

### 1.  *Necessarily Included*

"'California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense "necessarily included" in the charged offense, if there is substantial evidence that only the lesser crime was committed.'"  (*People v. Smith* (2013) 57 Cal.4th 232, 239 (*Smith*).)

"'This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence.'  [Citation.]  '[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.  Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither "harsher [n]or more lenient than the evidence merits." [Citations.]'  [Citation.]  Thus, 'a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence.  On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.'"  (*Smith*, *supra*, 57 Cal.4th at pp. 239-240.)

"For purposes of determining a trial court's instructional duties, . . . 'a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.'" (*Smith*, *supra*, 57 Cal.4th at p. 240.) Here, we rely on the accusatory pleading test as that test has been construed under *Smith* when conjunctive pleading is involved.

Section 69, which Braden was alleged to have violated, can be committed in two different ways. (*Smith*, *supra*, 57 Cal.4th at p. 240.) "The first way of violating section 69 'encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such duty at some time *in the future*.' [Citation.] The actual use of force or violence is not required." (*Ibid.*) "The second way of violating section 69 expressly requires that the defendant resist the officer 'by the use of force or violence,' and it further requires that the officer was acting lawfully at the time of the offense." (*Id.* at p. 241.)[7] Braden was charged with violating section 69 in both ways, which we refer to as the People's use of conjunctive pleading.

In *Smith*, our Supreme Court held that, assuming substantial evidence exists, sua sponte instruction is required "on a lesser offense that is necessarily included in one way

---

[7] Section 69 makes it a crime to "attempt[], by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law" as well as to "knowingly resist[], by the use of force or violence, the officer, in the performance of his or her duty." (§ 69, subd. (a).)

of violating a charged statute when the prosecution elects to charge the defendant with multiple ways of violating the statute." (*Smith*, *supra*, 57 Cal.4th at p. 244.) Put another way, where conjunctive pleading is used, if a lesser offense is necessarily committed under one theory of section 69 but not the other, the trial court must instruct on the lesser offense, if substantial evidence exists that only that crime was committed.

In *Smith*, our Supreme Court noted that the crime of resisting a peace officer under section 148(a)(1) "is not *intrinsically* a necessarily lesser included offense of section 69 because a defendant can violate section 69 in the *first* way, by attempting to deter an executive officer from performing a duty, without violating section 148(a)(1)." (*Smith*, *supra*, 57 Cal.4th at p. 243, italics added.) But because "it is not possible to violate section 69 in [the] *second* way without also violating section 148(a)(1)," and because the accusatory pleading there alleged both ways of violating section 69, the Court held that "section 148(a)(1) was a necessarily included offense of section 69." (*Smith*, at p. 243, italics added.)[8]

---

[8] In a concurring opinion, Justice Corrigan (joined by Justice Baxter) expressed disagreement with the view that conjunctive pleading should affect when one crime is a lesser included offense of another. (See *Smith*, *supra*, 57 Cal.4th at p. 249 (conc. opn. of Corrigan, J.) ["The accusatory pleading test should not take into account the use of conjunctive pleading alleging two separate ways of violating a statute as set out in the statutory language."].) As she stated, "[w]hen multiple theories of committing an offense are involved, the prosecution, by pleading the statute in the conjunctive, puts the defendant on notice that he may face conviction under either theory. The prosecution does not, however, assume the burden of proving each theory." (*Id.* at p. 248 (conc. opn. of Corrigan, J.).) However, because the majority relied on its own precedent in reaching its holding, and neither party had urged the court to overturn that precedent, Justice Corrigan concluded that "the question must await another day." (*Id.* at p. 245 (conc. opn. of Corrigan, J.).)

So, to reiterate, if any of the three lesser offenses Braden raises on appeal—assault, battery, and resisting a peace officer—are necessarily committed under *either* way of violating section 69, then the trial court was required to instruct the jury on that lesser included offense, assuming substantial evidence exists that only that offense was committed.

*Smith* expressly held that resisting a police officer under section 148(a)(1) satisfies this test. (*Smith*, *supra*, 57 Cal.4th at p. 243.) Moreover, assault satisfies this test as well. "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Because it is not possible to resist an executive officer in the performance of his or her duty "by the use of force or violence" (i.e., the "second" way of violating section 69) without at least attempting to commit a violent injury, assault is a lesser included offense of section 69 when conjunctive pleading is used. (See *People v. Brown* (2016) 245 Cal.App.4th 140, 153.)

Battery, however, is not necessarily committed under either way of violating section 69. "A battery is any willful or unlawful use of force or violence upon the person of another." (§ 242.) Battery, however, requires a touching. (*People v. Shockley* (2013) 58 Cal.4th 400, 404.) If, for example, an individual throws rocks at an officer as a means of resisting (or attempting to resist) the officer in the performance of his or her duty, then that individual violates section 69 in both ways. If none of those rocks hits the officer, however, then there is no touching, and therefore no battery, even though there may well have been a violation of section 69.

26

Accordingly, the trial court here had a sua sponte duty to instruct the jury on assault and resisting a police officer if there was substantial evidence to support the conclusion that Braden was guilty of only one or both of those offenses (the issue we turn to next). It had no sua sponte duty to instruct the jury on battery.[9]

2. *Substantial Evidence*

"A trial court must instruct on a lesser included offense 'only if there is substantial evidence to support a jury's determination that the defendant was in fact only guilty of the lesser offense.'" (*People v. Williams* (1997) 16 Cal.4th 153, 227; see also *People v. Breverman* (1998) 19 Cal.4th 142, 177 (*Breverman*).) "This standard requires instructions on a lesser included offense whenever '"a jury composed of reasonable [persons] *could . . . conclude*[]"' that the lesser, but not the greater, offense was committed. [Citation.] In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*Breverman*, *supra*, at p. 177.) In doing so, we consider the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

There is no substantial evidence here to support a jury determination that Braden committed only the lesser crimes of assault or resisting a peace officer under section

---

[9] The People agreed with Braden that battery was a lesser included offense under the accusatory pleading test, but as shown from the above, the concession was mistaken. (See *Desny v. Wilder* (1956) 46 Cal.2d 715, 729 [a reviewing court "is not bound to accept concession of parties as establishing the law applicable to a case"]; *Bradley v. Clark* (1901) 133 Cal. 196, 210 ["[O]ur duty [is] to declare the law as it is, and not as either appellant or respondent may assume it to be."].)

27

148(a)(1).[10] Braden's argument here is that the jury could have found that (1) Harvey was using excessive force on Braden, in which case Harvey was not acting lawfully at the time and the second way of violating section 69 could not apply, and that (2) Braden unreasonably responded to Harvey's excessive force with his own excessive force. (See *People v. Brown*, *supra*, 245 Cal.App.4th at p. 155; *People v. Castain* (1981) 122 Cal.App.3d 138, 145 ["even if the officer is not acting within the scope of his duties because of his use of excessive force, the defendant may still be guilty of simple battery if he responds with excessive force"].) This argument does not take into account, however, the uncontroverted fact that Braden punched Harvey first. Moreover, although Braden contends that his own use of excessive force occurred after he had been tackled to the ground by Harvey, Braden does not identify what specific actions would have reasonably constituted his excessive force. Although Braden makes references to him "struggl[ing]" with and "pull[ing] his arms away from Harvey" once on the ground, these actions alone do not reasonably constitute substantial evidence of excessive force.

Accordingly, on this record, we conclude that the trial court had no duty to instruct on assault, battery, or resisting a police officer under section 148(a)(1). Battery is not a lesser included offense, and there is no substantial evidence suggesting that Braden

---

[10] Section 148(a)(1) proscribes "willfully resist[ing], delay[ing], or obstruct[ing] any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment."

28

committed only assault or resisting a peace officer but not resisting an executive officer under section 69.[11]

## III.  DISPOSITION

The judgment of conviction is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

RAPHAEL _____
J.

We concur:

McKINSTER _____
Acting P. J.

FIELDS _____
J.

---

[11] We briefly note that Braden additionally fails to show that any error here would have been prejudicial.  "In a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818]."  (*Breverman*, *supra*, 19 Cal.4th at p. 178.)  This means that a "conviction of the charged offense may be reversed . . . only if, 'after an examination of the entire cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred [citation]."  (*Ibid.*)  The video of the incident, as well as Braden's mother's eyewitness statement that Braden had "charged" Harvey, show that there was no reasonable chance the jury would have ruled differently had they been instructed on the lesser included offenses.